# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| CHARLES COLEMAN | CIVIL ACTION NO. 05-0236-M |
| VS. | SECTION P |
| CALDWELL CORRECTIONAL CENTER, | JUDGE JAMES |
| ET AL. | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the court is the civil rights complaint (42 U.S.C. §1983) of *pro se* plaintiff Charles Coleman filed *in forma pauperis* on February 1, 2005. Coleman is incarcerated at the West Carroll Parish Detention Center in Epps, Louisiana, but he complains of incidents which occurred while he was incarcerated at the Caldwell Parish Correctional Center (CPCC), Grayson, Louisiana. Plaintiff names Caldwell Parish Sheriff Steve May, CPCC Warden Curtis Powell, CPCC Captain Freddy Mercer, and CPCC Lieutenant Antwine as his defendants. He demands that the defendants be prosecuted for extortion under Louisiana's criminal statute, La. R.S.14:66, and, that they "...be removed from any future employment in corrections..." He also seeks punitive damages for himself and for his friend Jamie Martin and he seeks lost wages for Ms. Martin and compensatory damages for he and Martin for retaliation, mental anguish and suffering. [Doc. 4, Paragraph V]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

On January 9, 2005, plaintiff was an inmate at CPCC. Plaintiff was preparing for

visitation and was advised that the CPCC Commissary would be closed for the weekend. Plaintiff gave Lt. Antwine a $100 bill to deposit in plaintiff's inmate account. However, plaintiff contends that Lt. Antwine did not deposit the money in his account.

On the same date, Jamie Martin came to CPCC to visit the plaintiff. Martin brought along several items of personal property (a portable television, a DVD player and DVDs, tennis shoes, magazines, vitamins, and CDs) to give to the plaintiff. Lt. Antwine asked Martin, "...what are you going to do for me for letting you bring these items in and giving them to inmate Charles Coleman." [Doc. 1, pp. 2-3] Martin had to give Antwine $100 to ensure delivery of the various items of personal property to plaintiff. However, after Martin paid that amount to Antwine, Antwine advised that Captain Mercer's approval was required before the inmate could possess the property.

Shortly thereafter, plaintiff was ordered to administrative lockdown by Captain Mercer. After plaintiff was removed from his dorm, Captain Mercer searched through his personal property. Later, Mercer interviewed plaintiff and asked him to relate the details of his encounter with Lt. Antwine. (Mercer also contacted Martin and asked her to provide the details of her encounter with Antwine.) Coleman was returned to lockdown. On the following Tuesday, he was interviewed by Captain Mercer and Warden Powell. He was asked to submit to a polygraph test and he agreed. (Martin was also asked to submit to a polygraph and she also agreed.)

Plaintiff was then interviewed by Detective Tony Children of the Caldwell Parish Sheriff's Office. Following his interview with the detective, plaintiff was removed from lockdown and placed back into A-dorm. That afternoon, the Warden arranged for plaintiff to have a special visitation session with Jamie Martin. Later that evening, plaintiff contacted

Martin on the telephone. Martin advised plaintiff that Capt. Mercer had returned all of plaintiff's personal property to her except for the vitamins; however, he offered to pay for the vitamins.

Mercer also advised plaintiff that one of the one-hundred dollar bills seized from Antwine would be retained for evidence.

On January 13, 2005, Lt. Antwine saw plaintiff cutting hair at the CPCC barbershop. He had plaintiff removed from the barbershop and sent back to A-dorm. Antwine advised plaintiff that he did not want plaintiff "...on his hall floors..." anymore.

Plaintiff attempted to contact Captain Mercer to advise him about this incident, however, Mercer did not return plaintiff's telephone call.

On January 14, 2005, plaintiff was transferred to the West Carroll Detention Center. Plaintiff was told to contact Martin and tell her to return to CPCC to get reimbursement for the money taken from her and for the vitamins. (The money taken as evidence was not returned to plaintiff or Ms. Martin.)

Martin later contacted Mercer and asked him about plaintiff's transfer. Mercer advised Martin that plaintiff was telling the other inmates and the public about the incident between him and Antwine and Mercer wanted to keep the investigation confidential.

## **LAW AND ANALYSIS**

### 1. Frivolity Review

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28

U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a civil rights suit as frivolous based on the complaint alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A complaint may not be dismissed under § 1915(d)(2)(B) "simply because the court finds the plaintiff's allegations unlikely." *Jolly v. Klein*, 923 F.Supp. 931, 942-43 (S.D.Tex.1996).

A civil rights plaintiff must support his claim(s) with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original sixteen page hand-written complaint, along with his amended complaint specifically detail his theories of liability with respect to each named defendant. The thoroughness of the complaints convinces the court that plaintiff has pled his best case and need not be afforded any further opportunity to amend.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted and accordingly,

recommends dismissal of the complaint as frivolous.

## 2. *Parratt/Hudson* Doctrine

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under §1983.

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amendment XIV. However, the jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under §1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts. *Id.* Although a prisoner may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford the prisoner a remedy. *Daniels,* 474 U.S. at 335, 106 S.Ct. at 667. Even in instances where intentional deprivation occurs, as is the case herein, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. *Hudson v.*

*Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that an intentional, random, and unauthorized deprivation occurred when cash and items of personal property were seized from an inmate and his visitor by a prison official. If adequate state law remedies are available, no further due process is required under the Constitution.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort committed by employees of the prison facility. See, La. Civil Code, Article 2315. This provision of state law which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine. Unless plaintiff can show that the defendants violated his constitutional rights, plaintiff's claim is not a cognizable claim under §1983. Therefore, the court concludes that plaintiff's claim is frivolous. See 28 U.S.C.

§1915(e)(2)(B)(i) and (ii).

### 3. Criminal Prosecution of the Defendants

Among other things, plaintiff demands that the defendants be prosecuted for the criminal offense of extortion. There is no constitutional right to have a person criminally prosecuted. See *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir.1990). The prosecution of criminal actions in the federal courts is a matter solely within the discretion of the Attorney General of the United States, and duly authorized United States Attorneys. The prosecution of criminal actions in the Louisiana courts is a matter solely within the discretion of the Louisiana Attorney General and the various District Attorneys. See La. C.Cr.P. arts. 61 and 62.

To the extent that plaintiff demands that the defendants be prosecuted, his claim is frivolous.

### 4. Retaliation/Transfer

Plaintiff claims that he was transferred from the CPCC as an act of retaliation. It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation. Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); *McDonald v. Steward*, 132 F.3d

225 (5th Cir. 1998).

Plaintiff has provided only conclusory allegations with respect to his claim of retaliation. He claims that he was transferred because he reported wrong-doing on the part of a CPCC employee. However, his pleadings suggest that his transfer may have occurred because he was discussing the on-going investigation of Lt. Antwine with other inmates, or to protect him from continuing harassment by Lt. Antwine.[1]

At any rate, the constitution does not protect a duly convicted prisoner against transfer from one institution to another. *Meachum v. Fano*, 427 U.S. 215, 223- 25, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). The United States Supreme Court has repeatedly found that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests. Prison officials need broad administrative authority because running a prison is an "extraordinarily difficult undertaking." *Mitchell v. Sheriff Department*, 995 F.2d 60, 62-63 (5th Cir.1993), citing *Wolff v. McDonnell*, 418 U.S. at 564-66, 94 S.Ct. at 2979; *Jackson v. Cain*, 864 F.2d 1235, 1247 (5th Cir.1989), citing *Hewitt v. Helms*, 459 U.S. 460, 466-68, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Transfer from a preferable to an inferior prison does not in itself state a due process claim because, in the absence of an appropriate state regulation, a prisoner has

---

[1] See Doc. 1, page 11, "...Capt. Freddy Mercer contacted Jamie Martin back and inform [sic] Jamie Martin that the reason why inmate Charles Coleman was transferred due to inmate Charles Coleman was suppose [sic] to be telling other inmates what was going on in this matter and investigation but it was to be on a down low [sic] and to be cover up and not to be heard by other inmates are [sic] the public eyes ..." See also Doc. 1, page 8, "On January 13, 2005 ... inmate Charles Coleman was at work at Caldwell Correctional Center Barbar [sic] shop cutting other inmates [sic] hair. Lt Antwine notice [sic] inmate Charles Coleman at work ...and sent his Sgt. David ... to inform me ... to go back into the ... A-dorm ... and he didn't want me on his hall floors due to what happen over the weekend..."

no liberty interest in residence in one prison or another. *Jackson v. Cain*, 864 F.2d at 1250, citing *Meachum v. Fano*, 427 U.S. at 223-25, 96 S.Ct. at 2538.

Consequently, plaintiff's retaliation claim lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### 5. Mental Anguish

Plaintiff seeks damages of $1000/day for "suffering" and $1000/day for "mental anguish." Title 42 U.S.C. § 1997e(e) provides, "No federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Recently, the Fifth Circuit Court of Appeals determined that with respect to the application of the above cited statutory provision, "... it is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

Thus, a prisoner's claim for mental anguish, coupled with his failure to allege physical injury, triggers the statutory bar of §1997e(e) precluding recovery of compensatory damages for emotional or mental injuries allegedly suffered as a result of a purported constitutional violation. Since he has alleged no physical injury as a result of the activities complained of, plaintiff's claims for suffering and mental anguish are frivolous.

### 6. Damages for Jamie Martin

Plaintiff also seeks damages on behalf of his friend, Jamie Martin. Petitioner is not an attorney and may not file suit on behalf of Ms. Martin. Although a non-attorney may appear in

proper person in his own behalf, that privilege is personal to him. *McShane v. United States*, 366 F.2d 286, 288 (9th Cir.1966). He has no authority to appear as an attorney for others than himself. *Russell v. United States*, 308 F.2d 78, 79 (9th Cir.1962); *Collins v. O'Brien*, 208 F.2d 44, 45 (D.C.Cir.1953), *cert. denied*, 347 U.S. 944, 74 S.Ct. 640, 98 L.Ed. 1092 (1954); *C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696 (9th Cir. 1987).

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this _____ day of _____, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE